[No. C055896. Third Dist. Feb. 20, 2008.]

THE PEOPLE, Plaintiff and Respondent, v.
ROBERT CRUZ ENRIQUEZ, Defendant and Appellant.

232

## COUNSEL

Kathrine Hart, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Carlos A. Martinez and Virna L. DePaul, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**ROBIE, J.**—In *People v. Hazle* (2007) 157 Cal.App.4th 567 [69 Cal.Rptr.3d 16], this court concluded that what appears to be a third petition to revoke a defendant's probation under Proposition 36 (the Substance Abuse and Crime Prevention Act of 2000) for drug-related reasons may not be treated as a separate noticed motion to revoke probation if the defendant was not on notice of the second petition at the time of the conduct underlying the third petition. This case gives us the opportunity to reiterate that conclusion and add to it another conclusion that reasonably follows from the first—a second petition may not be treated as a separate noticed motion to revoke probation if the defendant was not on notice of the first petition at the time of the conduct underlying the second petition. And where—as here—both situations exist, then what appear to be three separate petitions to revoke probation must be treated as one, and the defendant's Proposition 36 probation cannot be revoked, no matter how many violations of probation may be involved, unless the state proves the defendant poses a danger to others.

Based on the foregoing reasoning, we will conclude the trial court erred here in revoking defendant Robert Cruz Enriquez's Proposition 36 probation and sentencing him to two years in prison on what had to be treated as only the first petition to revoke his probation. Accordingly, we will reverse the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

On March 10, 2006, defendant was charged with possession of cocaine, being under the influence of methamphetamine, and obstruction of a peace officer arising out of an incident five days earlier on the side of Interstate 5 in Glenn County.

On August 25, 2006, defendant pled guilty to the two drug charges and was placed on probation under Proposition 36.

In October 2006, based on defendant's claim that he would be establishing a permanent residence in San Jose, the court ordered the case transferred to Santa Clara County so that he could participate in the Proposition 36 program there. Because of ongoing difficulties in completing the transfer, however, the case remained in Glenn County, with a hearing eventually set for February 14, 2007. In the interim, defendant was subject to the program in Glenn County, although he insisted (ultimately with the court's approval, but the

probation officer's disapproval) in satisfying the random drug testing condition of his probation by supplying test results from facilities outside the county.

In January 2007, Santa Clara County apparently refused to accept the transfer because defendant had never moved to San Jose. On February 5, the Glenn County probation officer learned that defendant had been arrested on drug charges in Santa Barbara County. In a report to the court filed the day before the February 14 hearing, the officer asserted that "[t]his matter will be monitored to review disposition of this case, and the possibility of a Petition for Revocation of Probation being filed." At the same time, the officer filed a petition to revoke defendant's probation based on the fact that defendant had "failed to submit a monthly report form for January 2007" and "failed to provide proof of attendance [at] NA meetings for the month of January 2007."

At the hearing the next day, defense counsel told the court he had received a call from defendant, who had just been released from jail in Santa Barbara County and would not be able to make it to Glenn County for the hearing. Defense counsel requested a continuance. The trial court denied the request and ordered the issuance of an arrest warrant for failure to appear.

A week later, on February 20, the probation officer filed a second petition to revoke defendant's probation, this one based on defendant's failure to appear at the February 14 hearing.

On March 23, 2007, defendant appeared in court in custody. There is no reporter's transcript of this appearance in the record, but the minute order notes that defendant acknowledged the receipt of one or both petitions to revoke his probation. The matter was set for a probation revocation hearing on April 4.

On April 3, the probation officer filed a third petition to revoke defendant's probation, this one based on his arrest in Santa Barbara County on February 4 for possession of a controlled substance.

At the hearing the next day, defense counsel asserted that defendant was going to admit that he did not appear in court on February 14 and that he was arrested in Santa Barbara County, but he asserted it was improper for the probation department "to file two petitions based on the same fact pattern" because defendant "failed to appear because he was arrested." The district

attorney agreed, asserting "the Court could take notice" "that there's a [Penal Code section] 654 problem with these petitions," "which means that there's only one petition." Speaking on her own behalf, the probation officer asserted there were three valid petitions because "defendant was released [from jail] that morning on the 14th" and "had time to catch a flight and be here in time for court."

Without deciding how many valid petitions there were, the trial court took defendant's admission that he failed to appear in court on February 14 and that he was arrested in Santa Barbara County on February 4. With regard to the first revocation petition, which was based on defendant's alleged failure to provide a monthly report form and proof of attendance at NA (Narcotics Anonymous) meetings for January 2007, defendant said, "I guess I'm guilty on that," which defense counsel acknowledged was "an admission" because defendant had not turned in proof of his attendance at NA (his "blue slip"). Defense counsel admitted he had the blue slip at that time. Defendant also admitted that "the other monthly report thing was in my file when I was arrested," which appeared to mean that defendant was still in possession of his monthly report for January 2007 when he was arrested in Santa Barbara County on February 4.

Based on defendant's admitted violations of probation and the probation officer's recommendation, the court referred the matter to probation for a report regarding "continued participation in treatment court and/or felony sentencing." The matter was continued to May 4.

On April 30, 2007, the probation officer filed her report, recommending that the court deny defendant reinstatement on probation and sentence him to the upper term of three years in prison. The probation officer asserted that because of his three probation violations, "defendant no longer qualifies for the Proposition 36 Program."

On May 3, 2007, defendant filed a document arguing that the three petitions should be deemed to be one "as the circumstances and effect fall from one operative fact, [his] arrest in Santa Barbara County."

At the hearing the next day, the court continued the matter to May 18 to allow defendant to file some documents supporting his assertion that all three violations arose from his arrest in Santa Barbara County. Subsequently, defendant filed the "blue slip" documenting his attendance at NA meetings

through January 10, 2007, and a form that appears to show he was released from jail in Santa Barbara County at 8:25 p.m. on February 13.

On May 18, the date of the continued hearing, the probation officer filed a letter report asserting that the three separate petitions were justified. The probation officer pointed out that defendant was not arrested until February 4; therefore, his arrest did not prevent him from submitting the monthly report and NA attendance verification by January 30 as she had advised him to do. The probation officer also argued that after being released from jail, defendant had had adequate time to get from Santa Barbara County to his court appearance the next day in Glenn County; therefore, his arrest did not prevent him from making that appearance.

The continued hearing was held on May 18 in front of Judge Roy G. MacFarland (a retired judge sitting for the first time on the case). Defense counsel argued that defendant should be reinstated on Proposition 36 probation because there was effectively only one violation of probation and the matter should be transferred to Santa Barbara County, where defendant was now living. The prosecutor disagreed, arguing there were three separate violations and that defendant was "not amenable" to further Proposition 36 probation. The court responded, "I hate Proposition 36. Yes, it works fine the first time when someone makes application. I'm all for that. But then they keep coming back, coming back, coming back. Exhibit A's over here to my immediate left, and they all come back and we keep piddling around with Proposition 36 spending a fortune. And I'm sure all the jail staff agrees. A fortune on these things with the defendants and their attorneys coming back in court. Get me back in Prop. 36. I don't want to get you in Prop. 36, I want to put you in the joint. I'm sick of this stuff. . . ."

The parties continued to argue over the number of violations of probation. The prosecutor argued that while the court could find three violations, "What it comes down to is amenability. Let's call it one, find him not amenable." The prosecutor then asserted that defendant would not be able to complete Proposition 36 in Santa Barbara because of a no-bail hold that had been placed on him in a Colorado case. The court responded, "The typical example of what we wind up doing with touchy feely court, you know. The social workers have taken this over. Let's let the social workers straighten it out. I just—send him back to Santa Barbara County and let them decide. I don't want to mess with him. Let Colorado and Santa Barbara decide what they're going to do with him. Glenn County spent enough money on this loser, right?" When the probation officer replied, "Yes," the trial court continued,

"So let's send him back, put him back—send him back to Santa Barbara County. Let them unscramble this egg. If they want to spend more time, more money, more taxpayers['] consideration, more court time, more everything with this guy, let them do it. As I say, he's had another drug offense and I'm sure he will have more, and Prop. 36 has failed with him as far as I'm concerned, but the law says I have to mess with it. Okay, I'll let Santa Barbara mess with it, and they can deal with Colorado. And maybe sometime down the line somebody will wake up and say this guy is a[n] incorrigible defendant, unfortunately like a lot of drug offenders are. Okay, back to Santa Barbara."

When defense counsel asked, "What's the ruling of the Court; one violation of probation?" the court responded, "One violation of probation." The probation officer interjected that defendant "still needs to be sentenced in this case," and defense counsel observed that "generally with one violation of probation the Court would reinstate him on Prop. 36 and release him from court." The court responded, "That's just what I did." The probation officer then argued that defendant was "not amenable for Prop. 36 because he will be in Colorado on a felony charge, several felony charges. He will be in Santa Barbara County on another felony charge, so he's not going to be available here to do Prop. 36. He needs to be sentenced today, Your Honor, and we are recommending a prison sentence. . . ."

Defense counsel argued that defendant was "entitled to another hearing on amenability" and reasserted that "[i]t's a normal process for this court to reinstate him on Prop. 36 . . . and release him," after which "Santa Barbara can take him, done, and we can transfer it to Santa Barbara County under Prop. 36. And if he's not amenable, they will sentence him."

The prosecutor sided with the probation officer that "[i]t comes down to amenability now." The probation officer then reiterated that there were "three separate violations" and that because of the holds from Santa Barbara County and Colorado defendant was "not going to come back here and be able to participate in Prop. 36, so he's not amenable. He can't do the counseling, the testing, or anything that's required of the Prop. 36 program, so he needs to be sentenced today." The court responded, "Why don't we let these other jurisdictions do their number on him. We don't know really what Colorado may do. The district attorney back there may find Jesus and decide that he should go free. I don't think he will, of course, but why do we continue to spend our time, money, effort messing with this dude?" The probation officer

asserted, "because we're going to still have to sentence him eventually, I would rather we sentence him and take care of our case. Once we sentence him, we're done with him. We will have the release from the jail. He will go to Colorado, Santa Barbara. But he still has to be sentenced in this case." The court agreed and continued the matter to the end of the calendar so it could look at the probation report. When the probation officer asked, "I'm sorry, Your Honor?" the court responded, "I love Proposition 36. Anybody not amenable to Prop. 36 get out of this courtroom, because I'm not amenable to it."

After hearing other cases, the court returned to this case, stating that it was prepared to proceed with sentencing. Defense counsel argued that because the court had found only one probation violation, the court should reinstate defendant on probation under Proposition 36. Counsel also argued that defendant was still amenable to treatment.

Echoing the probation officer's previous comments, the prosecutor asserted that defendant "is not going to be available for treatment" because "[t]oo many counties, too many states have him wanted for various reasons." The court responded, "I agree with the district attorney in this case. I think the defendant is not amenable to Prop. 36 treatment. I think that this is a classic example of what's wrong with Proposition 36. It's one of those expensive procedural games that the Court winds up in because this defendant is a criminal and he's had the opportunity. If he wished to clean up that part of his life, he could have. He didn't." Reiterating that defendant had violated probation, the court proceeded to sentence him to two years in prison.

Defendant filed a timely notice of appeal.

## DISCUSSION

### I

#### *The Parties' Arguments*

On appeal, defendant argues that the trial court abused its discretion in revoking his Proposition 36 probation because "the so-called three different violations of probation were in effect one violation."[1] According to defendant,

---

[1] Defendant also argues that he "was never allowed the opportunity to enroll in and attempt to complete the Proposition 36 drug program." This argument is belied by the many parts of the record that show defendant was participating in the Proposition 36 program in Glenn County while he awaited the transfer of his case to Santa Clara County, which ultimately never occurred.

"The statutory scheme behind Proposition 36 contemplates that each established violation will result in a revocation of probation, with the defendant having three chances to reform before losing eligibility for Proposition 36 probation," which he did not get.

For their part, the People assert "the trial court did not find [defendant] violated his probation three separate times. . . . Rather, the trial court (incorrectly) found that [his] three admissions constituted one probation violation" and "[u]pon this finding . . . revoked probation because it found him to be unamenable to further treatment." The People admit that based on its finding of one violation, the trial court could refuse to reinstate defendant on Proposition 36 probation only if it also found he was a danger to others. "Nevertheless," the People argue, "the trial court reached the correct result, just for incorrect reasons." The People contend that the evidence supported a finding of either two or three separate probation violations, and that in either event it was proper for the trial court not to reinstate defendant on Proposition 36 probation. In the People's view, the denial of reinstatement was proper if there were two violations because of the court's finding that defendant was unamenable for further treatment, and it was proper if there were three violations because either denial of reinstatement was mandatory or because of the court's finding that defendant was unamenable for further treatment.

As we will explain, although we disagree with defendant's assertion (and the trial court's finding) that there was only one violation of probation, we also disagree with the People's assertion that the revocation of defendant's Proposition 36 probation was justified because there was more than one violation. What is important here is not how many violations of probation there were, but how many separate noticed motions to revoke defendant's probation were properly before the trial court. Under Proposition 36, defendant was entitled to three distinct periods of probation before he lost his eligibility. He did not get that. Because of the timing of the filing of the three petitions, the evidence (or lack thereof) of when defendant received notice of them, and the conduct on which they were based, the three probation revocation petitions that were before the trial court properly could be treated as only a single petition. Accordingly, for reasons we explain more fully below, the trial court erred when it revoked defendant's probation.

## II

### *People v. Hazle*

Our conclusions in this case flow ineluctably from this court's recent decision in *People v. Hazle, supra*, 157 Cal.App.4th at page 567 (filed the day

before the People's brief in this case). As *Hazle* explains, Proposition 36 " 'gives offenders several chances at probation before permitting a court to impose jail time. The first time an offender violates a *drug-related* condition of probation, he is entitled to be returned to probation unless he poses a danger to others. [Citation.] The second time he violates a drug-related condition of probation, he is entitled to be returned to probation unless he poses a danger to others or is unamenable to treatment. [Citation.] Only upon a third violation of a drug-related condition of probation does an offender lose the benefit of Proposition 36's directive for treatment instead of incarceration. [Citation.] Upon such a violation, the court regains its discretion to impose jail or prison time.' "[2] (*Hazle*, at pp. 572–573, quoting *In re Taylor* (2003) 105 Cal.App.4th 1394, 1397–1398 [130 Cal.Rptr.2d 554].)

Like this case, *Hazle* involved three petitions to revoke a defendant's Proposition 36 probation. In *Hazle*, the first petition was filed on November 29, 2004, alleging use of methamphetamine and failure to report on two dates. (*People v. Hazle, supra,* 157 Cal.App.4th at p. 570.) The defendant admitted the allegations the same day, and the court reinstated him on probation. (*Ibid.*) The second petition was filed on May 20, 2005, alleging termination from the drug treatment program, submission of a dirty urine sample, failure to reregister his address, and failure to report for office visits. (*Id.* at pp. 570–571.) The defendant denied those allegations. (*Id.* at p. 571.) A week later, on May 27, 2005, the third petition was filed, alleging possession of alcohol on May 19—the day before the second petition was filed. (*Ibid.*) Following a consolidated hearing on the second and third petitions in September 2005, the trial court sustained the allegations in both petitions and, despite finding the defendant was amenable to further treatment under Proposition 36, found the defendant was no longer eligible for such treatment. (*Ibid.*)

■ On appeal, this court addressed the defendant's complaint "that the manner in which the petitions were filed deprived him of a third period in which to reform his errant conduct." (*People v. Hazle, supra,* 157 Cal.App.4th at p. 574.) The court noted that Penal Code[3] section 1210.1 requires three separate motions to revoke probation and that "generally, a motion is ineffectual absent *notice*." (157 Cal.App.4th at p. 575.) The court then

---

[2] As we did in *Hazle*, we apply the 2001 version of Penal Code section 1210.1 (the statute that embodies the pertinent part of Proposition 36; hereafter 2001 section 1210.1), the version that was in effect before the amendment the Legislature enacted in 2006. (Stats. 2001, ch. 721, § 3; see *People v. Hazle, supra,* 157 Cal.App.4th at p. 577, fn. 1; amended version at Stats. 2006, ch. 63, § 7.) We do this because even though the amended version of the statute would otherwise apply to this case based on the date of the sentencing hearing (May 18, 2007), enforcement of the bill containing that amendment has been enjoined by the Alameda County Superior Court. (*Hazle,* at p. 577, fn. 1.)

[3] All further statutory references are to the Penal Code unless otherwise indicated.

concluded that "consistent with the purpose of Proposition 36, the requirement that the People *move* three times encompasses the ordinary rule described above, that a motion, to be effectual *for purposes of having a disqualifying impact on the probationer*, must be *served* on the probationer. That way, the possibility or likelihood of losing Proposition 36 eligibility is brought home to him or her, providing an incentive to stop the errant behavior." (*Id.* at p. 576.) The court went on to conclude that under Proposition 36 a defendant "is entitled to three distinct periods of probation before he can be found ineligible (at least, based solely on *drug-related* violations)" and that "where, as in this case, no notice of one petition is given *before the conduct underlying the next petition occurs*, although a consolidated hearing may be proper, it would be improper to treat the result as if the People had made separate noticed motions." (*Id.* at p. 577.)

### III

#### Hazle *Compels the Conclusion That the Third Probation Revocation Petition Here Cannot Be Treated As a Separate Noticed Motion to Revoke Probation Under Proposition 36*

*Hazle*'s application to the third petition here is not difficult to fathom. The third petition in this case, which was filed on April 3, was based on defendant's arrest in Santa Barbara County on February 4, which occurred more than two weeks before the second petition was filed on February 20. Given that—just as in *Hazle*—"the facts supporting the third petition occurred *before* the second petition had been filed, and perforce before it was served on defendant" (*People v. Hazle, supra*, 157 Cal.App.4th at p. 571), it would be improper to treat the third petition as a separate noticed motion to revoke defendant's probation for purposes of Proposition 36.

We pause to note another reason, which neither of the parties has raised, why the third petition cannot be deemed valid for purposes of Proposition 36. Up to this point, everyone seems to have taken it for granted that the third petition properly alleged a violation of probation, which defendant subsequently admitted. That is not the case, however. What the third petition alleged was that "defendant was arrested on February 4, 2007, in Santa Barbara County for POSSESSION OF NARCOTICS/CONTROLLED SUBSTANCE," and that is what defendant admitted—his arrest in Santa Barbara County on February 4, 2007. At no time was it alleged that defendant committed the crime for which he was arrested, and defendant did not admit committing that crime. Defendant's mere *arrest*, however, was *not* a violation of his probation. The pertinent condition of defendant's probation was the standard condition that he "obey all laws." If defendant unlawfully possessed a controlled substance, then he violated that condition, but he did not violate

it simply by being arrested, which is all he admitted happened. For this reason as well, the third petition cannot be deemed valid for purposes of Proposition 36.

## IV

### Hazle *Also Compels the Conclusion That the Second Probation Revocation Petition Here Cannot Be Treated As a Separate Noticed Motion to Revoke Probation Under Proposition 36*

We now turn our attention to the second probation revocation petition. Given that lack of amenability for treatment is one of the criteria that justifies the revocation of Proposition 36 probation following a hearing on a second petition to revoke probation for a drug-related violation (see 2001 § 1210.1, subd. (e)(3)(B)), we might still have been able to affirm the trial court's revocation of defendant's probation based on its finding that defendant was not amenable to treatment if the first and second petitions could be validly treated as separate noticed motions to revoke defendant's probation. The problem is that those petitions cannot be treated as separate motions under the reasoning of *Hazle*. The first petition, which was based on defendant's failure to submit certain required documents to the probation department by January 30, was filed on February 13. The second petition (which was filed on February 20) was based on defendant's failure to appear at the hearing on February 14. This means the first petition was filed only a day before the conduct underlying the second petition occurred. There is no evidence in the record that between whatever time the first petition was filed on February 13, and 1:30 p.m. the following afternoon, when defendant was supposed to appear in court but did not, he received notice of the first petition. Indeed, the only evidence in the record suggesting when defendant received notice of the first petition is the notation in the minute order of March 23, 2007, that defendant acknowledged the receipt of one or both petitions to revoke his probation. Under these circumstances, just as with the third petition, it would be improper to treat the second petition as a separate noticed motion to revoke defendant's probation for purposes of Proposition 36.

## V

### *There Was Only One Valid Petition Before the Trial Court, No Matter How Many Violations Were Alleged or Established*

Based on the foregoing reasoning, we are left with the conclusion that the three probation revocation petitions that were before the trial court had to

be treated as a single petition for purposes of Proposition 36. Even assuming three separate violations of probation were alleged and established here—the failure to submit documents by January 30, the failure to appear in court on February 14, and the arrest on February 4[4]—given the timing of the filing of the three petitions, the evidence (or lack thereof) of when defendant received notice of them, and the conduct on which they were based, the trial court was obligated to act as though there was only one probation revocation petition before it—albeit a petition alleging all three of the violations.

VI

*The Trial Court Erred in Revoking Defendant's Probation Based on the Single Petition Before It*

As we have noted, the first time a defendant on Proposition 36 probation violates a drug-related condition of probation, he is entitled to be returned to probation unless he poses a danger to others. (2001 § 1210.1, subd. (e)(3)(A).) The trial court did not make such a finding here. Accordingly, we must reverse the judgment and remand the case to the trial court for a proper disposition of the one probation revocation petition that was properly before the court. If, on remand, the prosecution does not prove by a preponderance of the evidence that defendant poses a danger to others, then defendant must be reinstated on Proposition 36 probation. If the court reinstates defendant on probation, it may intensify or alter the drug treatment plan. (*Ibid.*)

VII

*Guidance on Remand*

Given the substantial confusion over the issue the first time through, it is worth emphasizing that amenability for treatment provides no basis for revoking defendant's Proposition 36 probation based on the first revocation petition. Danger to others is the only applicable criterion. (See *In re Mehdizadeh* (2003) 105 Cal.App.4th 995, 1001 [130 Cal.Rptr.2d 98] ["The issue of amenability to treatment is not before the court in a case involving a first time probation violation . . ."].)

For further guidance (although this observation is not directly material to the adjudication of defendant's first probation revocation petition), we also note that a defendant cannot be found unamenable to treatment merely

---

[4] We have explained already why this third event was not actually a violation of defendant's probation, but for purposes of the present discussion we will assume it was.

because of the possibility, or even the substantial likelihood, that he will be incarcerated in the future as the result of a pending custody hold. (See *People v. Muldrow* (2006) 144 Cal.App.4th 1038, 1047–1048 [50 Cal.Rptr.3d 848].) If, however, it is *certain* the defendant will be incarcerated—such as where he is sentenced to prison in a nondrug case at the same time he faces sentencing on a drug case in which he would otherwise be eligible for Proposition 36 probation—then Proposition 36 probation may be denied in the first instance. (See *People v. Esparza* (2003) 107 Cal.App.4th 691, 698–699 [132 Cal.Rptr.2d 377].) By similar reasoning, if defendant is incarcerated on any other criminal charges at the time this matter is brought before the trial court again on remand, then the court is not bound to reinstate him on Proposition 36 probation, notwithstanding our foregoing observations, since a court is "not required to engage in the superfluous act of placing a defendant on probation when he could not participate in the treatment program required as a condition of that probation." (*Id.* at p. 698.)

## VIII

### A  Different Judge Must Consider This Case on Remand

■ One issue remains. Defendant asserts that because Judge MacFarland "denounced Proposition 36 and persons enrolled in it" and by his comments demonstrated bias against defendant, the case must be remanded to the trial court and heard before a different judge. Because we have determined the judgment must be reversed and the case remanded due to the court's improper disposition of what must be deemed a single petition for revocation of defendant's probation, we need not decide whether Judge MacFarland's comments alone would justify reversal and remand. It is clear to us, however, that given his unabashed animosity toward Proposition 36, and particularly toward those defendants—like the one here—who are unable to complete Proposition 36 probation without a violation, Judge MacFarland cannot be permitted to conduct further hearings in this case on remand. "[I]f a reasonable man would entertain doubts concerning the judge's impartiality, disqualification is mandated." (*United Farm Workers of America v. Superior Court* (1985) 170 Cal.App.3d 97, 104 [216 Cal.Rptr. 4]; see also Code Civ. Proc., § 170.1, subd. (a)(6)(A)(iii).) Judge MacFarland's comments give rise to a reasonable doubt about whether he can be impartial in this case. Therefore, on remand, he shall not conduct any further proceedings in this case.

## DISPOSITION

The judgment is reversed, and the case is remanded for further proceedings consistent with this opinion before a different judge.

Davis, Acting P. J., and Morrison, J., concurred.