176 Cal.App.4th 270 (2009)
THE PEOPLE, Plaintiff and Respondent,
v.
OUSAMA SAADEH HADDAD, Defendant and Appellant.
No. B212880.
Court of Appeals of California, Second District, Division Five.
July 7, 2009.
*271 Richard L. Fitzer, under appointment by the Court of Appeal, for Defendant and Appellant.
Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Chung L. Mar and Michael R. Johnsen, Deputy Attorneys General, for Plaintiff and Respondent.

*272 OPINION
TURNER, P. J.
Defendant, Ousama Saadeh Haddad, pled guilty to methamphetamine possession (Health & Saf. Code, § 11377, subd. (a)); marijuana possession (Health & Saf. Code, § 11357, subd. (b)); and being under the influence of a controlled substance (Health & Saf. Code, § 11550, subd. (a)). Defendant appeals from a subsequent probation revocation order. Defendant argues he was found in violation of probation based upon a drug-related offense; therefore, he was improperly denied the opportunity to participate in probation pursuant to Penal Code[1] section 1210.1. This is commonly referred to as Proposition 36 probation. We affirm.
We view the evidence in a light most favorable to the judgment. (Jackson v. Virginia (1979) 443 U.S. 307, 319 [61 L.Ed.2d 560, 99 S.Ct. 2781]; People v. Elliot (2005) 37 Cal.4th 453, 466 [35 Cal.Rptr.3d 759, 122 P.3d 968]; Taylor v. Stainer (9th Cir. 1994) 31 F.3d 907, 908-909.) On July 29, 2008, defendant was stopped while riding a bicycle. Defendant was agitated and fidgety, had rapid speech, and his pupils were constricted. Defendant admitted he had used methamphetamine that morning. After defendant was arrested, two baggies containing 1 gram of methamphetamine and 0.44 grams of marijuana were found in his pocket. On July 31, 2008, defendant pled guilty as set forth above. On August 14, 2008, the imposition of sentence was suspended. Defendant was placed on three years' probation pursuant to section 1210.1, subdivision (a).[2] Defendant was ordered to not use or possess any narcotics, dangerous or restricted drugs, or related paraphernalia without a prescription; participate in a drug treatment program; submit to antinarcotic testing and search and seizure; and attend three Narcotics Anonymous meetings per week.
On November 17, 2008, defendant was found in possession of a device which attaches to an individual's body with a plastic tube that connects to a bottle filled with "clean" urine. (See People v. Budwiser (2006) 140 Cal.App.4th 105, 107 [44 Cal.Rptr.3d 296].) The device is used to provide urine that does not contain evidence of narcotics use in order to falsely reflect a negative test result. On December 11, 2008, a probation revocation hearing was held. The prosecutor argued that defendant's possession of the device constituted the offense of producing false evidence to a court, a separate violation which was not drug related within the meaning of section 1210.1, *273 subdivision (b)(2).[3] Defendant admitted that he was wearing the alternate urine device when he appeared for court-ordered antinarcotic testing. However, defense counsel argued that defendant's acts were drug related, requiring the reinstatement of the initial grant of Proposition 36 probation. The trial court, relying on the case of People v. Moniz (2006) 140 Cal.App.4th 86, 94 [43 Cal.Rptr.3d 904], ruled the use of the alternate urine device was not a drug-related violation of probation. In Moniz, our colleagues in the Court of Appeal for the Third Appellate District held that the defendant was ineligible for a grant of a Proposition 36 probation because his conviction for concealing heroin was not related to his use of drugs within the meaning of section 1210.1, subdivision (b)(2).
In finding defendant was ineligible for Proposition 36 probation, the trial court ruled: "What has happened here is that [defendant] attempted to avoid detection by utilizing a fairly sophisticated [device] to perpetrate a fraud on the program and perpetrate a fraud on the court. Because an to [sic] individual can attempt to avoid detectionlet's say the individual has used but is scheduled for a drug test and simply doesn't show up. But knowing that the failure to show up is going to be a violation, knowing that they [sic] judge is going to treat that as a dirty test. Not only was [defendant] attempting to avoid detection that he had been using, which I assume that's why he did all of this, but he tried to pass that he was testing cleanly because he's providing somebody else's urine. So it's a double fraud. One, he's attempting to avoid detection. One, he's trying to pass off that he's testing cleanly. When he does that and had his scheme worked, he would have gotten a clean test. So that deprives this court the ability to properly manage an individual under [Proposition] 36. So that he is obstructing the very core of the [Proposition] 36 program; that an individual is allowed to relapse. But then that gives the court the information that this court would need to come up with an appropriate treatment plan and increase the treatment level, put him in a residential program. But when the individual is going to such lengths that make it appear to the court that he is not using drugs, then that defeats the entire purpose. . . . [¶] Number 2, the integrity of the [Proposition] 36 program, the integrity of the individual treatment provideras we know ARC will not take him backand is greatly compromised by an individual who having done the [Proposition] 36 program before, knowing how the program operates that he goes to these lengths to not avoid not only detection [sic] but to give the impression that he's abiding by the rules and testing cleanly, and the program is working for him when in fact it has not. [¶] So by analogy this case is very similar to the Moniz case in the fact that this is an attempt by an *274 individual to notnot simply avoid a violation, but to give the impression that he is clean, because it goes much further than just avoiding a violation. So for all of the foregoing reasons, I am going to find that the use of a whizanator, and of course I may be incorrect, is a nondrug related violation of probation. And as such [Proposition] 36 is hereby terminated."
Defendant argues that the trial court improperly terminated his Proposition 36 probation because his use of the alternate urine device is a drug-related violation. We disagree. Section 1210, subdivision (d) states: "The term `misdemeanor not related to the use of drugs' means a misdemeanor that does not involve (1) the simple possession or use of drugs or drug paraphernalia, being present where drugs are used, or failure to register as a drug offender, or (2) any activity similar to those listed in (1)." Section 1210.1, subdivision (f)(2) provides: "If a defendant receives probation under subdivision (a), and violates that probation either by committing an offense that is not a nonviolent drug possession offense, or by violating a non-drug-related condition of probation, and the state moves to revoke probation, the court may remand the defendant for a period not exceeding 30 days during which time the court may receive input from treatment, probation, the state, and the defendant, and the court may conduct further hearings as it deems appropriate to determine whether or not probation should be reinstated under this section."
Our colleagues in the Court of Appeal for the Third Appellate District held: "[T]he purpose of Proposition 36 is `[t]o divert from incarceration into community-based substance abuse treatment programs non-violent defendants, probationers and parolees charged with simple drug possession or drug use offenses.' [Citations.]" (People v. Esparza (2003) 107 Cal.App.4th 691, 695-696 [132 Cal.Rptr.2d 377]; see People v. Muldrow (2006) 144 Cal.App.4th 1038, 1042 [50 Cal.Rptr.3d 848].) In the decision of In re Taylor (2003) 105 Cal.App.4th 1394, 1398 [130 Cal.Rptr.2d 554], our colleagues in Division Eight of this appellate district held: "Proposition 36 does not . . . extend the same grace [the ability to be returned to probation for violations of drug-related conditions of probation] to probationers who violate non-drug-related conditions of probation. The first time a probationer violates such a condition, the court has discretion to incarcerate the person. [Citation.]" (Original italics, fn. omitted; see People v. Enriquez (2008) 160 Cal.App.4th 230, 240 [72 Cal.Rptr.3d 718].)
In People v. Canty (2004) 32 Cal.4th 1266, 1280-1285 [14 Cal.Rptr.3d 1, 90 P.3d 1168], our Supreme Court considered whether driving under the influence of drugs was a "misdemeanor not related to the use of drugs" within the meaning of section 1210, subdivision (d). Our Supreme Court discussed the voters' intent reflected in the official ballot pamphlet: "[T]he *275 proponents of Proposition 36 stated that the measure was `strictly limited' and `only affects simple drug possession. No other criminal laws are changed.' (Ballot Pamp., Gen. Elec. (Nov. 7, 2000) argument in favor of Prop. 36, p. 26, italics added.)" (Id. (32 Cal.4th at p. 1281, fn. omitted.) Our Supreme Court concluded, "[S]ection 1210, subdivision (d)(2) may not fairly be construed to include the offense of misdemeanor driving while under the influence of drugs as an `activity similar' to the offenses described in section 1210, subdivision (d)(1)." (Id. at p. 1285.)
Likewise in People v. Moniz, supra, 140 Cal.App.4th at page 94, the court relied on the analysis in People v. Canty, supra, 32 Cal.4th at pages 1280-1285, and held that the offense of concealing evidence was a misdemeanor not related to the use of drugs. In Moniz the Court of Appeal held: "Our decision is bolstered by other recent cases finding that a variety of misdemeanors render a defendant ineligible for Proposition 36 treatment. In [People v.] Wheeler [(2005)] 127 Cal.App.4th [873,] 881 [26 Cal.Rptr.3d 138], the court found forgery of a medical prescription, even when intended to obtain drugs for personal use, does not come within the term `"nonviolent drug possession offense."' (See also People v. Foreman (2005) 126 Cal.App.4th 338, 343 [23 Cal.Rptr.3d 714].) Another court found the term `nonviolent drug possession offense' excludes the crime of possession of a controlled substance while in immediate personal possession of a firearm. (In re Ogea (2004) 121 Cal.App.4th 974, 985-987 [17 Cal.Rptr.3d 698]. The logic applied in these cases applies with equal force to the offense of concealing or destroying evidence." (Moniz, at p. 94; see also People v. Sharp (2003) 112 Cal.App.4th 1336, 1340, 1342 [5 Cal.Rptr.3d 771] [Prop. 36 does not apply to a conviction for cultivation of marijuana because it is not a nonviolent drug possession offense].) In People v. Martinez (2005) 127 Cal.App.4th 1156, 1162 [26 Cal.Rptr.3d 234], the defendant's probation was revoked following his attempt to cash a stolen check for the stated purpose of obtaining drugs. The resulting forgery offense was not a "`drug-related condition of probation'" within the definitions of Proposition 36.
(1) The conduct at issue, the effort to destroy evidence, violates a number of statutes, all of which have nothing to do with drugs. As discussed at oral argument, section 134 provides it is a felony to prepare false evidence for use in any inquiry authorized by law. (People v. Clark (1977) 72 Cal.App.3d 80, 84 [139 Cal.Rptr. 817]; People v. Blaydon (1957) 154 Cal.App.2d 817, 823 [317 P.2d 24].) Possession of the device in this case constitutes an attempt to prepare false evidence; i.e., more than mere preparation. (§ 664, subd. (a); People v. Stites (1888) 75 Cal. 570, 575 [17 P. 693]; People v. Layman (1968) *276 259 Cal.App.2d 404, 408 [66 Cal.Rptr. 267].) (2) Section 148, subdivision (a)(1) criminalizes the obstruction of a peace officer in the performance of his or her duties. The destruction of evidence constitutes the obstruction of justice. (2 Witkin & Epstein, Cal. Criminal Law (3d ed. 2000) Crimes Against Governmental Authority, § 4, p. 1087.) And a deputy probation officer is a peace officer. (§ 830.5, subd. (a); Hamilton v. Martinelli & Associates (2003) 110 Cal.App.4th 1012, 1017, fn. 2 [2 Cal.Rptr.3d 168].)
(3) Our Supreme Court has held: "The fundamental role and responsibility of the hearing judge in a revocation proceeding is not to determine whether the probationer is guilty or innocent of a crime, but whether a violation of the terms of probation has occurred, and, if so, whether it would be appropriate to allow the probationer to continue to retain his conditional liberty. [Citation.]" (Lucido v. Superior Court (1990) 51 Cal.3d 335, 348 [272 Cal.Rptr. 767, 795 P.2d 1223]; see also § 1203.2; People v. Stanphill (2009) 170 Cal.App.4th 61, 72 [87 Cal.Rptr.3d 643]; People v. Monette (1994) 25 Cal.App.4th 1572, 1575 [31 Cal.Rptr.2d 203].) (4) In this case, the trial court could reasonably find defendant's use of an alternate urine device was not a drug-related offense. Defendant intentionally attempted to perpetrate a fraud upon the court which defeated the purposes of his Proposition 36 probationary terms. The trial court could properly terminate defendant's section 1210.1 probation.
The judgment is affirmed.
Armstrong, J., concurred.
MOSK, J., Dissenting,
I dissent.
In People v. Moniz (2006) 140 Cal.App.4th 86 [43 Cal.Rptr.3d 904], the defendant was convicted both of various drug possession offenses and of violating Penal Code section 135 by willfully destroying or concealing material that was about to be produced into evidence. The court held that the violation of Penal Code section 135 made the defendant ineligible for Proposition 36 treatment under Penal Code section 1210.1, because the offense was not related to the use of drugs within the meaning of Penal Code section 1210, subdivision (d). The court said that the "purpose of section 135 is to prevent the obstruction of justice." (People v. Moniz, supra, 140 Cal.App.4th at p. 94.)
*277 Here, we are not concerned with defendant's initial eligibility for Proposition 36 treatment, but instead with returning to probation a first-time offender who violated a drug-related condition of probation and who posed no danger to others.[1] (In re Taylor (2003) 105 Cal.App.4th 1394, 1397 [130 Cal.Rptr.2d 554]; Pen. Code, § 1210.1, subd. (f)(3)(D).) Defendant was not charged with a substantive crime that would render him ineligible for Proposition 36 treatment initially, and did not try to conceal evidence that he knew would be introduced at trial. Rather, he tried to conceal his own drug use.
In In re Taylor, supra, 105 Cal.App.4th at page 1399, the court said that the failure to appear for drug testing is drug related. (See also In re Mehdizadeh (2003) 105 Cal.App.4th 995, 1000 [130 Cal.Rptr.2d 98] [characterizing the defendant's four missed drug tests as "drug-related" violations of probation].) In People v. Dixon (2003) 113 Cal.App.4th 146, 152 [5 Cal.Rptr.3d 917], the court suggested that probation violations in connection with drug testing are drug related. Not appearing for drug testing is one means of avoiding a positive drug test and detection of drug use. That is a form of concealing evidence that is required to be produced. It is not far different from the method used by defendant in this case. Moreover, had defendant tested positive for drug use, there is no question that would be drug related. Defendant flunked his drug test in another mannerperhaps less honorable, but he still just evidenced drug use as if he had tested positive.
Here defendant's violation concerned drug testing. He was not charged with or convicted of any offense in connection with the drug testing. I cannot see how this is not drug related for purposes of Proposition 36. "It involves no linguistic or logical stretch to deem a probationer's obligation to take drug tests a part of his treatment regimen, because tests permit authorities to monitor a probationer's compliance with the program by ensuring he is abstaining from illegal drugs." (In re Taylor, supra, 105 Cal.App.4th at p. 1398.) The same can be said of the obligation to take the test properly. Failing to show up for a drug test is as much cheating as using the device employed by defendant. In either case, the probationer seeks to avoid detection. It is anticipated that drug users "often initially falter in their recovery," and this is why "Proposition 36 gives offenders several chances at probation before permitting a court to impose jail time." (Id. at p. 1397.)
In the sporting world, the use of substances to mask drug use is considered and treated as a drug violation. Indeed, masking agents are banned substances. (See News Release, United States Anti-Doping Agency, Jan. 28, *278 2009.) Cheating by using masking agents, cheating by failing to appear for a drug test, and cheating by using a device such as that used by defendant are all cheating and all should be treated identically under Proposition 36.
For these reasons, I would reverse the trial court's termination of defendant's Proposition 36 probation.
NOTES
[1] All further statutory references are to the Penal Code unless otherwise indicated.
[2] Section 1210.1 states in relevant part: "(a) Notwithstanding any other provision of law, and except as provided in subdivision (b), any person convicted of a nonviolent drug possession offense shall receive probation. As a condition of probation the court shall require participation in and completion of an appropriate drug treatment program."
[3] Section 1210.1, subdivision (b) states in relevant part: "Subdivision (a) shall not apply to any of the following: [¶] . . . [¶] (2) Any defendant who, in addition to one or more nonviolent drug possession offenses, has been convicted in the same proceeding of a misdemeanor not related to the use of drugs or any felony."
[1] There is no showing of such a danger. Indeed, defendant was placed on probation outside the Proposition 36 program.